# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **JONATHAN M. HOLLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:21CV00515 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **WARDEN DAVIS, ET AL.,** | ) | Judge James P. Jones |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Jonathan M. Holley*, Pro Se Plaintiff; *Anthony S. Cottone*, Byrne Canaan Law, Richmond, Virginia, for Defendant Dr. McDuffie.

Plaintiff Jonathan M. Holley, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. He alleges that he was injured when he fell on a wet floor and that he did not thereafter receive appropriate mental health care from remaining defendant, Dr. McDuffie. After reviewing of the record, I conclude that Dr. McDuffie's Motion for Summary Judgment must be granted on the ground that Holley failed to exhaust available administrative remedies.

I. Background.

At the time Holley's claims arose, he was confined at Wallens Ridge State Prison (Wallens Ridge), a facility operated by the Virginia Department of Corrections (VDOC). In the Amended Complaint, filed February 3, 2022, Holley alleges that on the morning of May 21, 2021, he slipped on a wet spot on the floor

outside his cell, fell, and injured himself. He claimed that medical staff who responded to his cell after the fall denied his request to see a head trauma specialist and that the psychiatrist refused his requests for mental health care. Holley also sued correctional officers and the Wallens Ridge warden for not expediting treatment and denying that the fall occurred. He states that after the fall, he experienced back pain, blurred vision, dizziness, migraines, and memory blackouts.

I previously granted a Motion to Dismiss as to all claims except one. The remaining claim alleges that Dr. McDuffie, the prison psychiatrist, "repeatedly refuse[d Holley's] requests for counseltation [sic] filed every month since [the fall] occurred and this compounds [his] mental and emotional trauma." Amend. Compl. 2, ECF No. 15. Holley contends that Dr. McDuffie "refused to see or speak" to him in the months following the day he fell, although the doctor sees all the other inmates on Holley's pod at least once every two months. *Id*. at 3. Holley contends that the doctor's refusal to see him deprived him of the opportunity to receive adjustments of his medications and needed counseling. Holley states his belief that Dr. McDuffie chose not to see him because the doctor does not want to upset his employer, VDOC.

Dr. McDuffie has filed a Motion for Summary Judgment, supported by affidavits. Holley has responded, making the motion ripe for disposition.

II. DISCUSSION.

A. Standards of Review.

The Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).[1] "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* In considering a motion for summary judgment, the court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Id.* at 312-13. To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action in this court concerning prison conditions until he has first exhausted available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step

---

[1] I have omitted internal quotation marks, alterations, and citations here and throughout this Opinion, unless otherwise noted.

of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in his lawsuit is not available through the prison's grievance proceedings, he must, nevertheless, exhaust properly all available remedies under that procedure before bringing a civil action in this court. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

### B. VDOC Grievance Procedures.

Operating Procedure (OP) 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). Mem. Supp. Mot. Summ. J. Ex. F, Ravizee Aff. and Attach. A, OP 866.1, ECF No. 115-8. All issues are grievable except disciplinary proceedings and matters outside the control of the VDOC. Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, which he may do by completing an Informal Complaint form and submitting it to prison staff. He should receive a written response on the bottom of the Informal Complaint form within fifteen days, to allow him to initiate the formal grievance procedure by filing a Regular Grievance (with the Informal Complaint or any other relevant documentation attached).

A Regular Grievance must be filed within thirty days of the occurrence about which it complains. If a Regular Grievance does not comply with the filing

requirements of OP 866.1, it will be rejected at intake and returned to the inmate within two working days from the date of receipt. The respondent will note on the back of the form the reason for rejection (expired filing period, more than one issue raised, request for services, etc.). The respondent will also instruct the inmate how to remedy any problems with the grievance if feasible so that he can correct the issue and resubmit the Regular Grievance. If the inmate disagrees with the intake decision, he may send the Regular Grievance to the Regional Ombudsman for review of that decision.

After a Regular Grievance is accepted at intake, it will be stamped with the date received and "staff must accept the grievance and log it into VACORIS [VDOC's computer record system] using the received date. Within two working days, designated staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." OP 866.1 III(C)(4), ECF No. 115-8. Then, the warden or his designee will investigate the complaint it contains and send the inmate a Level I response. If the responding official determines the grievance to be unfounded, the inmate has five days to submit the Regular Grievance and attachments on appeal to Level II, an appropriate VDOC official such as the Regional Administrator or other administrator, depending on subject matter. In most cases, this Level II review is the final available level of appeal. For full exhaustion,

the inmate must submit his claim via an Informal Complaint, then in a Regular Grievance, and then through all available levels of appeal in OP 866.1.

### C. Holley's Administrative Remedy Records.

Holley's claim against Dr. McDuffie relates to medical or mental health care. He has attached several inmate request forms to the Amended Complaint, many of which touch on medical or mental health issues. Am. Compl. Attach. 7 (Holley's request form asking, "Can I see the mental health doctor about my problem?"); Attach. 9 (Holley's request form complaining of muscle spasms in his back), ECF No. 15-1. Ravizee explains that inmate request forms are not part of the grievance procedures prescribed in OP 866.1. Request forms do not become part of an inmate's grievance file, nor do they satisfy any step of the procedures required under OP 866.1 and § 1997e(a). Ravizee also states,

> There is not a separate process for filing complaints about medical staff as opposed to correctional staff. If any member of the medical staff refused to see Mr. Holley in spite of his requests [for care], his remedy would begin with the filing of a written complaint in the same manner that Mr. Holley has done for multiple other issues.

Ravizee Aff. ¶ 13, ECF No. 115-8.

Ravizee's review of Holley's grievance file at Wallens Ridge from May 21, 2021, through the filing of the summary judgment motion in August 2022, reflects that he has not filed any grievances against Dr. McDuffie for refusing to meet with him. The grievance file (attached to Ravizee's affidavit as Exhibit B) shows that

Holley filed Informal Complaint forms and Regular Grievances about other incidents or concerns at Wallens Ridge during the same time period. Ravizee states that Holley "has not filed any written complaint against Dr. McDuffie." *Id.* Thus he has not properly exhausted his administrative remedies as to his § 1983 claims against Dr. McDuffie as required under the VDOC procedures and 42 U.S.C. § 1997e(a). Holley has not disputed the accuracy of Ravizee's affidavit or her characterization of his Wallens Ridge grievance file as containing no recorded complaints or grievances about Dr. McDuffie's care.

The defendant bears the burden of proving the affirmative defense that Holley failed to exhaust available administrative remedies regarding his claims before filing suit. *Jones* v. Brook, 549 U.S. 199, 216 (2007). Dr. McDuffie has done so. From the undisputed evidence of Holley's recorded grievance filings, it is clear that he did not properly file and have recorded any written complaint form or Regular Grievance about Dr. McDuffie's alleged refusal to consult with him, or advance to any of the available appeals within the VDOC procedure.

Holley can survive summary judgment for failure to exhaust if he shows that the remedies under the established grievance procedures were not "available" to him. *Ross*, 578 U.S. at 641–45. An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

In response to the summary judgment evidence, Holley apparently attempts to show that procedures were not available. He states, "I tried to resolve this issue but I didn't get some written complaint responses back on this issue that I mailed out in the U.S. Mail." Decl. Opp'n Mot. Summ. J. ¶ 4, ECF No. 163. An attached document purports to be a letter Holley sent to the Regional Ombudsman, dated December 25, 2021, stating:

> I'm writing again because I haven't got no response to resolve my issue. I wrote my complaints on DR. Mullins, RN Christian, and DR. McDuffie. I sent mail out and a (WRSP) guard put my mail in a bag marked U.S. Postal Service. I would like you to resolve this issue, of May 21, 2021 in front of cell A-308 at WRSP @ 9:30 AM, or tell me I have exhausted all my administrative remedies. Please respond to my letter.

*Id.* Attach., ECF 163-2.

This letter and Holley's declaration suggest that he wrote and tried to file complaint forms or grievances under the VDOC procedure, but believes they got lost in the mail. This suggestion rests on nothing more than general and conclusory statements unsupported by any factual allegations. Holley does not state what particular type of administrative remedy forms he filed, what he asserted on the forms, or when or how he attempted to submit the forms. Moreover, if Holley properly filed a Regular Grievance about Dr. McDuffie, he should have received a receipt within two days after mailing it, showing that the document had been received by staff and recorded in VACORIS. If Holley did not receive such a receipt,

he would have known to inquire about it to staff designated to receive Regular Grievances. He could also have rewritten and resubmitted the remedy form to ensure that he timely filed a Regular Grievance.

Holley's self-serving and conclusory allegations about some unspecified remedy forms he filed on an unspecified date making unspecified complaints are the type of factually unsupported generalizations that the court need not accept as true in a summary judgment analysis. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992) (finding that non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment). Moreover, "unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment." *Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017)). The district court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

Based on the record before me, I conclude that Holley has failed to present a genuine issue of material fact on which he could persuade a fact finder that he properly exhausted administrative remedies at Wallens Ridge in the months after Dr.

McDuffie's alleged deprivations of care or that such remedies were unavailable to him. Therefore, I conclude that this lawsuit is barred under 42 U.S.C. § 1997e(a) because Holley did not exhaust his administrative remedies before filing the case, and the defendant is entitled to summary judgment on that ground as a matter of law. I also find no indication from the VDOC grievance procedure in the record that Holley could now pursue and exhaust administrative remedies about Dr. McDuffie's alleged failure to provide him care during the months between May 21, 2021, and the date when he filed this lawsuit in October 2022. Accordingly, I will dismiss his § 1983 claims against Dr. McDuffie with prejudice.

### III. Conclusion.

For the reasons stated, it is hereby **ORDERED** that Dr. McDuffie's Motion for Summary Judgment, ECF No. 114, is GRANTED, and the claims against him are DISMISSED WITH PREJUDICE.

A separate Judgment will enter herewith.

ENTER: July 5, 2023

/s/ James P. Jones
Senior United States District Judge